**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Chidinma Grace Salako,<br><br>            Plaintiff,<br><br>v.<br><br>Rushmore Loan Management Services LLC, *et al.*,<br><br>            Defendants. | No. CV-25-01063-PHX-JJT<br><br>**ORDER** |

Numerous motions are at issue, but primarily at issue is Defendant Rushmore Loan Management Services LLC ("Rushmore") and Defendant Nationstar Mortgage LLC dba Mr. Cooper's ("Mr. Cooper") joint Motion to Dismiss (Doc. 19, MTD). The Court finds this matter appropriate for resolution without oral argument. *See* LRCiv 7.2(f). For the reasons set forth below, the Court grants in part and denies in part Defendants' Motion.

**I.    Background**

Plaintiff Chidinma Salako, proceeding *pro se*, initiated this lawsuit in Pinal County Superior Court on February 24, 2025. Two days later she filed an amended complaint, which remains the operative pleading in this case. (*See* Doc. 1-2, FAC.) Defendants removed this case on the basis of diversity jurisdiction. (*See* Doc. 1.) Plaintiff's FAC alleges as follows.

In 2022, Plaintiff obtained a residential home loan through an entity known as DHI. Shortly thereafter, "Plaintiff's mortgage was transferred to Defendant Rushmore." (FAC ¶ 11(a).) Following the transfer of Plaintiff's loan, Plaintiff made regular payments to

Rushmore. Some payments were in excess of what was owing, and other payments were deficient, but Plaintiff avers that she promptly corrected the deficiencies and that, on the whole, she kept current with her loan obligations. (FAC ¶ 11(b)–(c).) In December 2022, "Defendant Rushmore transferred Plaintiff's mortgage to Defendant Mr. Cooper." (FAC ¶ 11(d).) Immediately thereafter, Mr. Cooper notified Plaintiff that she had missed a payment prior to Mr. Cooper's acquisition of the loan, but Plaintiff maintains that she in fact had not missed a payment. (FAC ¶ 11(d).) Plaintiff made regular payments to Mr. Cooper, but other issues continued to arise, some directly related to allegedly deficient payments, and some unrelated to the payments, such as a dispute regarding whether Plaintiff had adequately renewed her home insurance. (*See* FAC ¶ 11(e)–(g).) "Plaintiff's last monthly mortgage payment to Defendant MR. COOPER was made on December 31, 2024 for the January 2025 mortgage." (FAC ¶ 11(i).) "Despite making timely and full monthly mortgage payments from June 2022 through December 2024, Plaintiff received numerous emails and letters from Defendant Mr. Cooper, falsely notifying her of alleged missed payments. Additionally, Plaintiff received Mortgage Loan Statements showing amounts due that were double to triple her actual monthly mortgage obligation." (FAC ¶ 11(j).) Plaintiff claims to have received other correspondence from Mr. Cooper designed to misrepresent both the state of her loan and her conduct in discharging her loan obligations. (FAC ¶ 11(k)–(m).) Plaintiff undertook substantial efforts to ameliorate the situation, all to no avail. For instance, "Plaintiff drove to Defendant MR. COOPER's office at 2501 S Price Rd, Chandler, AZ. There, Plaintiff was told by security that Defendant Mr. Cooper did not have a physical office at the location and that their name was merely displayed to give the impression of having an office." (FAC ¶ 11(m).) Mr. Cooper's actions caused Plaintiff's credit score to fall from 755 to 600. (FAC ¶ 11(n).) Mr. Cooper's conduct, such as his recurring threat to initiate foreclosure, has also inflicted severe emotional distress upon Plaintiff. (FAC ¶ 11(o)–(p).) Finally, Plaintiff alleges that Mr. Cooper sent what can only be described as goons to harass Plaintiff at her residence. (FAC ¶ 11(o).)

Plaintiff's FAC states 11 claims for relief: (1) breach of contract, (2) breach of the covenant of good faith and fair dealing, (3) negligence, (4) fraudulent misrepresentation, (5) negligent misrepresentation, (6) fraudulent concealment, (7) declaratory relief, (8) accounting, (9) intentional infliction of emotional distress (IIED), (10) violation of the Arizona Consumer Fraud Act (ACFA), (11) and quiet title. Roughly a month after this case was removed, but before Defendants filed their Motion to Dismiss, Plaintiff filed a document entitled "Relation Back of Amendments Pursuant to Fed. R. Civ. P. 15(c)." (Doc. 18.) Therein, Plaintiff lists twenty causes of action, many of which are already asserted in her FAC but several of which are new. The new claims include, as denominated by the numerals used in Plaintiff's filing, (8) "attempted break-in by Mr. Cooper agents to illegally acquire Plaintiff's property," (10) "severe depression and suicidality," (12) "charging illegal fees," (13) "escrow account fraud," (14) "manipulation of fixed 3.5% interest rate," (15) "property tax fraud," (16) "home insurance fraud," (17) "issuance of fraudulent tax documents," (18) "initiation of aggressive, illegal foreclosure," (19) "negligent data breach," and (20) "false claims of missed payments, late fees, misapplication of mortgage payments." Plaintiff's filing contains almost no facts supporting these causes of action; they are simply enumerated without further development.

Plaintiff's "Relation Back" document evinces a fundamental misunderstanding of the function of Rule 15(c). As its subtitle indicates, Rule 15(c) determines "when an amendment relates back." Thus, Rule 15(c) is a provision that governs the *interpretation* of amended pleadings. It is not an independent fount of authority for the filing of an amended pleading. Such pleadings must be filed in accordance with Rule 15(a), as augmented by Local Rule of Civil Procedure 15.1. Plaintiff's "Relation Back" document indicates that Defendants did not object to the filing of a second amended complaint. Therefore, consistent with Local Rule 15.1(b), which governs amendments by consent, Plaintiff was required to file an "amended pleading." An amended pleading is not an unadorned list of causes of action that Plaintiff seeks to shoehorn into an existing pleading.

1 As Local Rule 15.1(b) makes clear, "[t]he amended pleading must not incorporate by
2 reference any part of the preceding pleading." In other words, an amended pleading must
3 stand on its own two feet; it may not be a mere add-on to a prior pleading. As Plaintiff's
4 "Relation Back" document is not a pleading within the meaning of the Federal or Local
5 Rules, the Court will disregard it. Should Plaintiff desire to file an amended pleading
6 following the issuance of this Order, she may seek to do so, whether by motion or by
7 consent. If she desires to proceed via consent, she must procure new consent from
8 Defendants, as their prior-given consent is likely stale.

9       Defendants moved to dismiss Plaintiff's FAC in its entirety. (*See* MTD.) Plaintiff
10 filed a Response (Doc. 22, Response), and Plaintiff also filed a contemporaneous motion
11 for Rule 11 sanctions (Doc. 23). Four days later, Plaintiff withdrew her sanctions motion
12 and filed a motion to strike the declaration of Defendants' counsel that Defendants
13 submitted in support of their Motion to Dismiss. (*See* Doc. 24; Doc. 25.) Plaintiff's motion
14 to strike contains an attached supplement that reasserts a Rule 11 violation. (*See* Doc. 25-1.)
15 The motion to strike and its attachment are wholly without merit, and the Court therefore
16 denies them.[1] Plaintiff also filed an addendum to her Response, which addendum included
17 an attached "motion to deny Defendants' motion." (*See* Doc. 26.) This filing is an
18 impermissible sur-reply, and the Court accordingly disregards it. Defendants filed their
19 Reply (Doc. 28, Reply), along with a Request for Judicial Notice (Doc. 29). Plaintiff then
20 filed a motion to supplement her Response (*See* Doc. 32.) Her proposed supplement is a
21 list of judicial rulings in which various courts have found that Defendants committed a
22 litany of bad acts unrelated to the present matter. (*See* Doc. 32-1.) Such information is
23 irrelevant, and the Court therefore denies Plaintiff's motion to supplement.
24 . . .

---

[1] In their response to the motion to strike, Defendants ask the Court to award them their fees incurred in responding to Plaintiff's motion for sanctions and motion to strike. (Doc. 30 at 10.) The Court declines to do so, but the Court warns Plaintiff that she must cease engaging in inflammatory and pointless tactical maneuvers. The Court understands that Plaintiff is impassioned by the subject matter of this case, given that Plaintiff is a *pro se* litigant who has a direct personal interest in this matter. Nevertheless, Plaintiff must refrain from indulging in unwarranted aggression.

## II. Legal Standard

Rule 12(b)(6) is designed to "test[] the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A dismissal under Rule 12(b)(6) for failure to state a claim can be based on either: (1) the lack of a cognizable legal theory; or (2) the absence of sufficient factual allegations to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When analyzing a complaint for failure to state a claim, the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

"While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (cleaned up and citations omitted). Legal conclusions couched as factual allegations are not entitled to the assumption of truth and therefore are insufficient to defeat a motion to dismiss for failure to state a claim. *Iqbal*, 556 U.S. at 679–80. However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that 'recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

## III. Discussion

Defendants argue that Plaintiff's claim for breach of contract fails because she has failed to allege the elements thereof. (MTD at 3–6.) First, Defendants contend that Plaintiff

has failed to establish contractual privity between the parties. This argument is unavailing, as Plaintiff repeatedly alleges that Defendants accepted an assignment of Plaintiff's loan and that "[i]t is pursuant to this agreement that Defendants have collected monthly payments on the subject loan and are claiming a beneficial interest in the subject property." (*See, e.g.*, FAC ¶ 17.) As the instant Motion is a motion to dismiss, and not a motion for summary judgment, the Court must accept Plaintiff's well-pled factual allegations as true. In light of the liberal construction that the Court is duty-bound to give Plaintiff's FAC, *see Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010), the Court finds Plaintiff's statement that "Plaintiff alleges a written agreement with Defendants" to be sufficient to allege a written agreement with Defendants. Defendants cite caselaw for the proposition that loan servicers are rarely found to be in privity with borrowers, but that something is rarely true is hardly a reason to deem it to be untrue in this particular lawsuit *at the pleading stage*. The Court concludes that Plaintiff's well-pled allegation that the subject loan was "transferred" to Defendants is sufficient to allege the existence of a contractual relationship between the parties.[2]

. . .

---

[2] In their Reply and associated Request for Judicial Notice, Defendants proffer a variety of records that purportedly demonstrate the absence of a loan assignment. These records include a DataTree Property Detail Report, a Pinal County Recorded Document Search, a Rushmore Notice of Servicing Transfer, and a Nationstar Notice of Servicing Transfer. (*See* Reply at 1–2.) Defendants also refer in their Reply to certain SEC filings that Plaintiff mentions in her Response. (*See* Reply at 2.) The Court does not fault Defendants for seeking to introduce these documents into the analysis, as Plaintiff herself evinces an intent that the Court review documents extraneous to the FAC. Nevertheless, the Court is doubtful that consideration of these documents would be proper, as a "document [that] merely creates a defense to the well-pled allegations in the complaint [does] not necessarily form the basis of the complaint" and is therefore not necessarily amenable to incorporation by reference. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). In any event, regardless of whether the Court *could* expand its analysis to account for the myriad documents submitted by Defendants, the Court declines to do so. "Whether the district court incorporates a document by reference is a matter of discretion." *Napear v. Bonneville Int'l Corp.*, 669 F. Supp. 3d 948, 957 (E.D. Cal. 2023). Were the Court to accede to Defendants' request, it would essentially be conducting a summary-judgment analysis on Plaintiff's well-pled allegation that a contract exists between the parties. The Court finds this to be an inferior method of adjudication. Plaintiff ought to have an opportunity to properly marshal her evidence with the advance knowledge of the burden of proof that she must bear. The Court therefore declines to incorporate by reference or otherwise take judicial notice of the extra-pleading documents submitted by Defendants in support of their argument that no contract exists in this case.

Defendants also argue that Plaintiff has failed to allege that Defendants breached their obligations or that any damages resulted therefrom. These arguments are unavailing. Regarding damages, Plaintiff avers that she experienced a hit to her credit score and that "Plaintiff has suffered injury in that Plaintiff has had exorbitant fees, costs and interest added to the subject loan resulting from Defendants' unlawful conduct." (*See* FAC ¶ 33.) Regarding breach, Plaintiff alleges that "Defendants materially breached Paragraph 2 of the DOT by failing to properly apply Plaintiff's monthly mortgage payments as detailed in Paragraph 11 hereinabove." (FAC ¶ 18.) Although Defendants point out that Plaintiff's FAC could be read to allege that she breached her own obligations under the contract, that fact does not void the FAC's numerous allegations that Defendants, too, materially violated their contractual duties. The FAC's allegations are sufficient for a *pro se* litigant to survive the pleading stage of a lawsuit in federal court.

Defendants next argue that Plaintiff's claim for breach of the covenant of good faith and fair dealing fails because Plaintiff was not denied the benefit of her bargain.[3] This argument is difficult to comprehend, as the allegations in Plaintiff's FAC, if credited as true, plainly demonstrate that she was denied the benefit of her bargain. Defendants would have the Court believe that the sole object of Plaintiff's loan agreement was receipt of the principal and that accurate processing of her repayment thereof was not a component of the bargain. (MTD at 6–7.) Thus, under Defendants' view, a person who borrows money and then suffers the malicious and illegitimate rejection of her repayments on the debt, as well as all of the legal and practical consequences that flow from such a fabricated non-repayment, has not been denied the benefit of her bargain. The Court rejects this proposition.

Defendants next argue that Plaintiff's claim under ACFA fails because it relates solely to conduct that occurred after Plaintiff entered into the original loan agreement with DHI. (MTD at 8–9.) Defendants are correct. Plaintiff's ACFA claim does not pertain to

---

[3] Defendants also contend that Plaintiff has failed to allege the sort of special relationship that could support the version of this claim that sounds in tort. (MTD at 6–7.) This argument is academic, as Plaintiff brought her good-faith-and-fair-dealing claim as a contractual cause of action. (*See* FAC ¶ 24.)

- 7 -

any act or omission concerning the origination of the loan, but rather concerns only such post-origination activities as attempted foreclosure, improper accounting, inaccurate noticing, illegitimate communications, and the like. (*See* FAC ¶ 78.) Defendants cite several cases for the proposition that ACFA only supports a claim relating to conduct comprising the sale or attempted sale of a new loan, not the sort of post-origination servicing activities at issue here. *See, e.g.*, *Zoldessy v. MUFG Union Bank, N.A.*, No. CV-20-08329-PCT-SPL, 2021 WL 1733398, at *3 (D. Ariz. May 3, 2021). Defendants' position appears to be meritorious, and Plaintiff has failed to meaningfully respond to it. The Court therefore dismisses the FAC's claim arising under ACFA. *See Brown v. Sperber-Porter*, No. CV-16-02801-PHX-SRB, 2017 WL 10410091, at *4 (D. Ariz. Dec. 20, 2017) (noting that "a court may consider an argument conceded when a party fails to counter it").

Defendants next argue that Arizona's economic loss rule bars Plaintiff's tort claims for negligence, fraudulent misrepresentation, negligent misrepresentation, fraudulent concealment, and IIED. (MTD at 9–10.) This argument fails. In their briefing to the Court, Defendants repeatedly insist that no contractual privity exists between the parties. "The principal function of the economic loss doctrine . . . is to encourage private ordering of economic relationships and to uphold the expectations of the parties by limiting a plaintiff to contractual remedies for loss of the benefit of the bargain. These concerns are not implicated when the plaintiff lacks privity and cannot pursue contractual remedies." *Flagstaff Affordable Hous. Ltd. P'ship v. Design All., Inc.*, 223 Ariz. 320, 327 ¶ 38 (2010). Defendants are attempting to eat their cake and have it too. If, as Defendants contend, Plaintiff is legally barred from obtaining contractual relief against Defendants for their alleged misconduct, then Defendants would face an uphill battle convincing the Court that Plaintiff is *also* legally barred from recovering in tort. Given that the Court declines to definitively determine at this juncture whether a contract exists, and given that the Court *a fotriori* declines to determine what the precise terms of the alleged contract consist of, the Court will not rule upon whether the economic loss doctrine bars Plaintiff's claims. Insofar as Plaintiff's contract claims are inconsistent with her tort claims, the Court construes the

FAC as pleading claims in the alternative. *See Arnold & Assocs., Inc. v. Misys Healthcare Sys.*, 275 F. Supp. 2d 1013, 1029–30 & n.12 (D. Ariz. 2003) (explaining that "parties may plead alternatively or inconsistently").

Defendant next argues that Plaintiff's negligence and negligent misrepresentation claims fail because Plaintiff has not successfully established that Defendants owed her a duty. (MTD at 10–11.) The FAC states that "Defendants, acting as Plaintiff's lender and/or loan servicer and/or trustee, had a duty to exercise reasonable care and skill in servicing the subject loan and ensuring that monthly mortgage payments are applied correctly." (FAC ¶ 28.) Here, as elsewhere, Defendants' argument elides the fact that this is a case involving a *pro se* complaint at the pleading stage. Plaintiff's allegation of a duty of care is sufficient to pass muster at this juncture. Moreover, Defendant's legal argument is misplaced. Defendants cite Arizona caselaw for the proposition that Defendants only owed Plaintiff a creditor/debtor duty and not a fiduciary duty, but that proposition does not help Defendants, at least not without further elaboration. The case that Defendants rely on, *McAlister v. Citibank*, 171 Ariz. 207 (Ct. App. 1992), itself distinguishes fiduciary duties from negligence duties, and it implies that the latter can obtain by virtue of ordinary business relationships even in the absence of special circumstances, *see id.* at 212, 215. It therefore does not follow that Defendants owed Plaintiff no duty of care simply because Defendants did not owe Plaintiff a fiduciary duty. *See Standard Chartered PLC v. Price Waterhouse*, 190 Ariz. 6, 26 (Ct. App. 1996) (warning that conflating separate legal duties "would debase the concept of fiduciary duty and confuse it with the duty to exercise ordinary care and skill").

Defendants next argue that Plaintiff's claims for fraudulent misrepresentation and fraudulent concealment fail because Plaintiff did not plead such claims with the specificity required by Rule 9. This argument is unavailing. "Rule 9(b) demands that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th

Cir. 2009) (cleaned up). "Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Id.* (cleaned up). "A party alleging fraud must set forth more than the neutral facts necessary to identify the transaction." *Id.* (cleaned up). The FAC meets this standard. After describing in great detail the various misrepresentations regarding Plaintiff's loan status allegedly made by Defendants, (*see* FAC ¶ 37), the FAC states:

> At the time Defendants made the aforementioned misrepresentations, they knew that they were false and were made solely to induce reliance upon them by Plaintiff and the rest of the world (County Recorder, Courts). Namely, Defendants wanted Plaintiff and the rest of the world to believe that Plaintiff was in default on the subject loan and facing imminent foreclosure and that Defendants were proceeding with the requirements of the law in servicing the subject loan and referring it to foreclosure.
>
> [] The fraudulent misrepresentations discussed in Paragraphs 11 and 37 (as well as any reference to any fraudulent documents) were made with the intent to deceive Plaintiff, the County Recorder and the Courts, and prevent Plaintiff from taking precautionary measures to protect herself from the foreclosure process, from incurring excessive fees associated with foreclosure, and from saving her interest in the subject property.

(FAC ¶¶ 38–39.) That Defendants substantively disagree with the validity of the FAC's allegations does not render those allegations inadequate as a matter of the federal pleading standard.

Defendants also argue that Plaintiff cannot establish reliance on the alleged fraud if she knew of the statements' falsity. This point is well-taken, but Plaintiff alleges that Defendants sought to induce not only her, but also third parties, to rely on the fraudulent statements. Although the parties did not brief this issue, Arizona generally distinguishes between the tort of misrepresentation, regarding which the plaintiff must be the party who relied on the misrepresentation, and the tort of injurious falsehood, regarding which the plaintiff may recover for harm suffered as a result of a third party's reliance on the false statement. *See W. Techs., Inc. v. Sverdrup & Parcel, Inc.*, 154 Ariz. 1, 3–4 (Ct. App. 1986); Restatement (Second) of Torts § 623A. Insofar as Plaintiff mislabeled her claims regarding

the allegedly false conduct of Defendants, the Court does not perceive such an error to be a proper basis of dismissal.

Defendants next argue that Plaintiff's claim for IIED must be dismissed because the allegations contained in the FAC, even if true, do not rise to the level of outrageousness required by Arizona law. (MTD at 12–13.) This argument is unavailing. If the Court credits Plaintiff's allegations, as it must, then Defendants did not merely find themselves in a business dispute with Plaintiff regarding her home loan, but instead fabricated a business dispute in order to illegally evict Plaintiff from her home. That behavior is sufficiently outrageous to be intolerable in a civilized community.

Defendants next argue that Plaintiff's claim for an accounting fails because an accounting is a remedy that normally sounds in equity and that is ordinarily reserved for cases of such exceeding complexity that a jury could not be reasonably expected to disaggregate the transactions. (MTD at 13–14.) Additionally, Defendants contend that this remedy is generally reserved for situations involving fiduciary relationships. Defendants cite caselaw supporting these propositions. *See, e.g.*, *Hannibal-Fisher v. Grand Canyon Univ.*, 523 F. Supp. 3d 1087, 1099–1100 (D. Ariz. 2021). Defendants' position is meritorious, and Plaintiff has failed to meaningfully respond to it. The Court therefore dismisses the FAC's accounting claim.

Defendants next argue that Plaintiff's claims for quiet title and declaratory relief fail because Plaintiff has not satisfied the prerequisite of tendering the outstanding loan amount. (MTD at 14–15.) "Quiet title is not a remedy available to a trustor under an Arizona Trust Deed until the debt is paid or tendered." *Eason v. IndyMac Bank, FSB*, No. CV 09-1423-PHX-JAT, 2010 WL 4573270, at *3 (D. Ariz. Nov. 5, 2010). Plaintiff does not allege that she paid or tendered the outstanding loan amount. Rather, in the FAC itself, Plaintiff states that "if necessary, she is willing and able to tender an amount deemed necessary by this Court in order to proceed with her claims against Defendants." (*See* FAC ¶¶ 12, 84.) Under Arizona law, such an averment is not a tender.

- 11 -

> [Tender] imports, not merely the readiness and the ability to pay or perform at the time and place mentioned in the contract, but also the actual production of the thing to be paid and delivered over, and an offer of it to the person to whom the tender is to be made; and the act of tender must be such that it needs only acceptance by the one to whom it is made to complete the transaction.

*Mariposa Dev. Co. v. Stoddard*, 147 Ariz. 561, 564 (Ct. App. 1985) (quoting *Cagle v. Carlson*, 146 Ariz. 292, 295 (Ct. App. 1985)). Plaintiff's attempted tender is therefore fatally conditional and indefinite. Moreover, as the purpose of Arizona's tender requirement is "to avoid needless litigation," *see id.*, a tender made for the first time in a complaint may be deficient for lack of timeliness. The Court will dismiss Plaintiff's claim for quiet title. However, Defendants are incorrect that Plaintiff's claim for declaratory relief is merely an appendage of her claim for quiet title. The FAC seeks a declaration regarding, *inter alia*, "the duties and obligations of the respective parties with regard to the subject loan." (*See* FAC ¶ 58.) Thus, the failure of Plaintiff's claim for quiet title does not doom her request for declaratory relief. *See* A.R.S. § 12-1831 ("Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed.").

Defendants' final argument is that Plaintiff's claims for negligence, IIED, and consumer fraud are time-barred by the applicable statutes of limitations. (MTD at 15–16.) As the ACFA claim is independently dismissible for the reasons stated above, the Court does not consider whether it is also time-barred. Defendants cite Arizona statutes and caselaw establishing that claims of negligence and IIED are subject to a limitations period of two years. Defendants contend that Plaintiff's claims accrued on December 15, 2022, which is the date that Plaintiff received the first communication from Mr. Cooper inaccurately informing her that she was delinquent on her loan. The Court disagrees with Defendants' argument. Although the first of numerous alleged misrepresentations may have occurred on December 15, 2022, Plaintiff alleges that that instance was merely the opening salvo in a pattern of deceptive behavior that continued into December 2024. In Arizona, claims such as IIED and negligence may be subject to the continuing-violations

doctrine, under which "a tort claim based on a series of closely related wrongful acts may be treated as alleging a continuing wrong that accrues for limitations purposes not at the inception of the wrongdoing but upon its termination." *See Watkins v. Arpaio*, 239 Ariz. 168, 171–73 ¶¶ 8–19 (Ct. App. 2016). Defendants do not address this doctrine. In the absence of a meaningful argument that Defendants' conduct does not constitute a continuing wrong, the Court cannot dismiss Plaintiff's claims on timeliness grounds.

## IV.   Conclusion

Plaintiff's claims for an accounting, for quiet title, and for relief under ACFA are dismissed. The remainder of the claims in the FAC stand. As noted above, Plaintiff's "Relation Back" document is void for procedural impropriety. The Court therefore declines to pass upon any of the new claims asserted therein.

On May 30, Plaintiff filed a motion to join DHI as a defendant by way of a second amended complaint. (*See* Doc. 37.) One day later, she withdrew that motion due to a minor error and filed a corrected version. (*See* Doc. 41; Doc. 42.) Plaintiff's new motion contains two separate proposed second amended complaints. The first is a fifty-four-page document that is a "redline" version of her FAC. (*See* Doc. 42-1.) However, the redlines on this document are merely lines of red text superimposed over the text of the FAC. The red text is at times pasted directly over existing text such that neither is readable. (*See* FAC at 4.) This is not an acceptable pleading and does not conform with Local Rule 15.1(a)'s requirement that "[a] party who moves for leave to amend a pleading must attach a copy of the proposed amended pleading as an exhibit to the motion, which must indicate in what respect it differs from the pleading which it amends, by bracketing or striking through the text to be deleted and underlining the text to be added." Compounding the procedural impropriety of Plaintiff's motion is its second attachment, which is a "clean version" of the proposed second amended complaint that bears no relation to the redline version. The clean version is a mere eight pages, and it is almost entirely devoid of factual allegations. (*See* Doc. 42-2.) Thus, for more than one reason, the Court will deny Plaintiff's motion to

1  amend. Should Plaintiff desire to later refile a similar motion, she must comply with both
2  the Federal and Local Rules.
3        Finally, Plaintiff has filed a Request for Enforcement of Order Granting Electronic
4  Filing, wherein she asks the Court to order Defendants to stop mailing her paper copies of
5  documents and to instead serve documents exclusively through the Court's CM/ECF
6  system. (*See* Doc. 40.) Plaintiff does not state what documents Defendants have mailed
7  her. More importantly, Plaintiff does not aver that she contacted Defendants or their
8  counsel prior to filing this request. The Court declines to grant the request and instead
9  directs the parties to cooperate in good faith. If, and only if, such cooperation fails, a party
10 may move this Court for relief.

**IT IS THEREFORE ORDERED** granting in part and denying in part Defendants' Motion to Dismiss (Doc. 19). The claims in the FAC (Doc. 1-2) for an accounting, for quiet title, and for relief under the Arizona Consumer Fraud Act are dismissed. The eight remaining claims in the FAC are preserved.

**IT IS FURTHER ORDERED** denying Plaintiff's Motion to Strike (Doc. 25); denying Plaintiff's Motion to Supplement (Doc. 32); denying Plaintiff's first Motion to Join (Doc. 37); denying Plaintiff's Request for Enforcement (Doc. 40); and denying Plaintiff's second Motion to Join (Doc. 42).

Dated this 2nd day of June, 2025.

_____
Honorable John J. Tuchi
United States District Judge