**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Chidinma Grace Salako, | No. CV-25-01063-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Rushmore Loan Management Services LLC, *et al.*, | |
| Defendants. | |

Now pending before the Court is yet another slew of discovery-related disputes. Those filings include *pro se* Plaintiff Chidinma Grace Salako's four motions requesting, *inter alia*, various protective orders (Docs. 138, 139, 143, 145), to which Defendants filed a consolidated, omnibus response (Doc. 148), and Plaintiff replied (Doc. 150). The parties also filed a Joint Discovery Dispute Statement No. 2 (Doc. 151) regarding other discovery issues that Plaintiff supplemented with two "notices" (Docs. 155, 156), revealing that this matter has, once more, digressed into morass.

**I.   CONFERRAL**

First, the Court is aware the parties now disagree even about how they may conduct meet-and-confers, which are required before filing notices of discovery disputes and certain motions. The Court has not been encyclopedic in its listing of the fora or media that may facilitate the meet-and confer. The purpose of the meet-and-confer is as follows: when a party believes another party is proceeding in a way that is contrary to the applicable rules or the law interpreting those rules, the meet-and-confer is required to give the objecting

party the opportunity to raise with the other party that disagreement and for the other party, upon hearing the concern, to in good faith evaluate the concern to determine whether it has merit. If the other party agrees the first party's concern has merit, the other party can correct course or the parties can reach some compromised resolution short of involving the Court and requiring it to devote its concededly scarce time refereeing another dispute whose solution is evident in the rules. If the other party does not agree, then the motion or notice is filed and the Court must engage. That is all. The meet-and-confer is not a forum for arguing the merits of the case, nor is it the place to raise things that have happened in other facets of the litigation. It is simply a way to isolate a perceived misstep in the pleadings or the conduct of discovery and discuss that limited question—and nothing else—to determine if the parties can resolve the limited issue by mutual assent without coming back to the Court over and over.

Having observed the above first principle, the Court next observes there can be multiple modes to effectively meet and confer. It expressly recognized in its prior scheduling order the possibility of conducting the meet-and-confer face to face or by telephone because those are the most obvious ways to conduct a contemporaneous discussion that allows for real-time reaction and civil give-and-take among the parties. The Court most favors telephonic meet-and-confers because they have the added advantage of saving the parties time and money. But it does not impose or limit modes of conducting the meet-and-confer to these two options. The Court understands that one party here would prefer to confer via email. As long as that party—whichever one seeks to communicate via email—does not delay the conferral process and, therefore, defeat its spirit by unreasonably long delays in responding, email serves the purpose of the meet-and-confer as set forth above. Now that the conferral requirement is clarified, the Court turns to the growing and unresolved discovery disputes and Plaintiff's various motions.

## II.     JOINT DISCOVERY DISPUTE

The parties have brought forth their second formal discovery dispute. This time, Defendants allege that Plaintiff: (1) either fails to respond to discovery requests or did

respond but rewrote the original request prior to providing her response; (2) refuses to provide her availability for a deposition; (3) fails to produce documents she received from third party subpoenas; and (4) refuses to cooperate in signing a protective order following this Court's standard form despite requesting that protection. (Doc. 151 at 2.) Plaintiff denies that she rewrote Defendants' discovery requests, claiming that she "responded in good faith to each request as received, using the wording provided, and supplied narrative responses describing events as they occurred." (*Id*. at 3.) The record clearly demonstrates the opposite. Plaintiff *did* rewrite several discovery requests. This she would have had to do manually and with intention. While in some instances she merely summarized a request, in others she altered a request so significantly that it no longer resembled the original premise or purpose of Defendant's request, to favor Plaintiff's own position. For example, Defendant Nationstar's third request for admission asked Plaintiff to "[a]dmit the Note requires monthly payments of principal and interest in the amount of $1,888.52." (Doc. 151-2 at 18.) Plaintiff rewrote the statement to say, "[a]dmit that Nationstar did not send you any bills or statements in June 2022," which Plaintiff subsequently admitted. (*Id*. at 29.) Several such alterations are significant, intentional, self-serving, and resemble anything but a "good faith" attempt to respond to Defendants' discovery requests.

For Plaintiff's portion of the joint discovery dispute, she advances that Defendants sent her "an unsolicited ZIP folder" that contained malware or a virus. (Doc. 151 at 3.) She cancelled access to the ZIP file and emailed Defendants' counsel regarding the incident, who promptly explained that the ZIP file was necessary because the documents Plaintiff requested were too large to send as an email attachment, and the ZIP file would have merely opened a separate folder to those documents.[1] (Doc. 152-1 at 3.) Plaintiff also accuses Defendants' counsel of contributing to an "escalating and disorienting discovery environment" and sending "multiple emails containing inconsistent accusations." (Doc. 151 at 3.)

. . .

---

[1] Based on this Court's own experience with ZIP files, Defendants' counsel's explanation to Plaintiff is accurate.

- 3 -

The Court has reviewed all written communications submitted by the parties—once again at great cost to it in terms of the scarce time it has had to dedicate to the task. There was not a single circumstance where Defendants' counsel was inconsistent or otherwise improper. Counsel clearly set forth the deficiencies in Plaintiff's discovery responses multiple times, twice extended the deadline for Plaintiff's responses without being asked, and electronically sent the original discovery documents upon Plaintiff's request in an appropriate manner. When they were accused of sending malware—an accusation the Court finds ungrounded in any evidence and not credible—Defendants' counsel proactively sent paper copies to Plaintiff, only to be rebuffed once more on the ground that she has "diabetic retinopathy and [is] unable to read printed materials effectively. . ." (Doc. 151 at 3)—another assertion unsupported in the record. Even assuming that Plaintiff is unable to read paper documents and Defendants knew this, Plaintiff effectively obstructed any delivery method of the documents *she* requested and proposed no alternatives to Defendants. The discovery phase of litigation is not a game, but the course of events the Court recounts here creates the strong impression that Plaintiff is engaged in a game of "gotcha," especially where the Court has patiently explained the process to her at the Rule 16 conference and in resolving the last formal discovery dispute in this matter. It is unclear whether the parties have successfully transmitted the requested documents to date.[2] What is clear, though, is that Plaintiff makes no attempt to present workable solutions or snubs any explanation or attempt by Defendants' counsel to mitigate the problems that arise.

This theme is also evident in Defendants' attempt to resolve Plaintiff's desire for a protective order, which they drafted as a nearly exact replica of the Court's standard form and promptly presented to her. (Doc. 151-3 at 3.) Rather than joining Defendants' proposed protective order, which would have provided a degree of the protection she now seeks, she filed multiple motions for various protective orders. Plaintiff has since characterized her correspondence with opposing counsel and her numerous filings as her attempt to "resolve discovery issues cooperatively" and "request[] Court guidance when confusion and mental

---

[2] Regardless, Plaintiff now has access to Defendants' original discovery requests which are attached to the Joint Discovery Dispute Statement as Exhibit A (*see* Doc. 151-1).

- 4 -

torture suddenly arose upon her." (Doc. 151 at 3.) There is nothing cooperative about Plaintiff's conduct and she seeks far more than mere "guidance" from the Court.

After the parties filed their Joint Discovery Dispute, Plaintiff filed two "notices." In the first, she notifies the Court of an additional discovery dispute that arose *after* the filing of the Joint Discovery Dispute but that is not properly before the Court pursuant to its prior Order. (Doc. 155; *see* Doc. 57 (order).) In both notices, Plaintiff merely supplements her portion of Joint Discovery Dispute. Having already had an opportunity to be heard as to the discovery dispute, the Court strikes Plaintiff's recent notices as improper and frivolous.

After reviewing the discovery requests and responses, interparty communications, and the parties' joint statement, the Court finds that Plaintiff has acted unreasonably to obstruct Defendants' discovery efforts. Despite its conclusions, the Court will not reach for the most extreme remedy of sanctions at this point. Rather, as further detailed in Section VI, *infra*, it will require Plaintiff to comply without fail with her discovery obligations under the rules as well as this Order, in which the Court has been and will be painstakingly explicit about its requirements.

No later than five days of the date of this Order, Defendants shall file a Notice of Discovery Deficiencies with the Court identifying with precision each discovery request that was not answered or was altered by Plaintiff to date, or for which production of documents (if requested) has not been completed. No later than ten days after Defendants file the Notice, Plaintiff shall respond to each discovery request identified in Defendants' notice without altering the requests and produce all requested material. Plaintiff shall provide those responses and documents directly to Defendants. No later than three days after providing her responses and documents to Defendants, Plaintiff shall file a Notice of Compliance with the Court without any attachments. No later than seven days after Defendants receive the responses, they shall file a notice of certification of Plaintiff's compliance listing all requests they deem Plaintiff to have complied with and, if necessary, a motion for sanctions identifying any requests Plaintiff has not complied with, along with Defendants' basis for so concluding.

The remaining discovery disputes raised by the parties permeate Plaintiff's various motions, so the Court will now address those disputes and motions concurrently.

### III. PLAINTIFF'S MOTIONS FOR PROTECTIVE ORDER

Pretrial discovery is broad by design and entitles a party to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "The Rules do not differentiate between information that is private or intimate and that to which no privacy interests attach. Under the Rules, the only express limitations are that the information sought is not privileged, and is relevant to the subject matter of the pending action. Thus, the Rules often allow extensive intrusion into the affairs of both litigants and third parties." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 30 (1984). Despite the liberality of pretrial discovery, courts have the authority to issue protective orders for good cause shown "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1); *see also Seattle Times Co.*, 467 U.S. at 34–35.

The party seeking a protective order bears the burden of showing good cause. *Phillips v. GMC*, 307 F.3d 1206, 1210–11 (9th Cir. 2002). Good cause exists where "specific prejudice or harm will result if no protective order is granted." *Id*. at 1211 (citation modified); *see also San Jose Mercury News, Inc. v. United States Dist. Court - N. Dist.*, 187 F.3d 1096, 1103 (9th Cir. 1999). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Beckman Indus. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992). "The court considers all factors to determine whether the totality of the circumstances justifies the entry of a protective order." *Doe v. Horne*, 737 F. Supp. 3d 758, 767–68 (D. Ariz. 2024) (citation omitted).

But even when a party satisfies its burden to show harm or prejudice, the protective remedy is not automatically—as Plaintiff seems to assume—to preclude the seeking party from getting the information it requests. Indeed, as is evident in the Court's "go-by" protective order, such orders often provide the movant "protection" by controlling and limiting what the seeking party may do with the information once obtained, while still

1 allowing the party to make appropriate use of the evidence. The limitations often take the form of prohibiting the seeking party from showing the protected information to anyone other than the trial team; from discussing, copying or transmitting the information to anyone else; and requiring its destruction or return upon completion of the matter. In other words, the protective order may still compel the deposition to proceed, or the interrogatories to be answered, or the business records to be produced, but will tightly control what may thereafter happen with the results. It is in that light that the Court turns to analyzing the protective order requests here contested.

First, Plaintiff seeks an order forbidding Defendants' selected method of in-person deposition and prescribing the written deposition method set forth in Rule 31. (Doc. 138 at 3; Doc. 145 at 3.) Plaintiff asserts a protective order is necessary because "discovery disputes remain unresolved," "Court-ordered discovery is still pending," and an in-person deposition would cause Plaintiff "undue mental and emotional harm." (Doc. 138 at 3.) First, the fact that discovery is ongoing—even if ordered by the Court—and that discovery disputes are now pending does not absolve Plaintiff from complying with her own discovery obligations. Among those obligations would include appearing for a deposition in-person should a party request it. *See* Fed. R. Civ. P. 30(a)(1). Second, generalized assertion of "undue mental and emotional harm" from participating in an in-person deposition is neither particularized nor articulated such that good cause exists under Rule 26(c). Lastly, Plaintiff broadly asserts that an in-person deposition is not "proportional."

. . .
. . .
. . .
. . .
. . .
. . .
. . .
. . .

She provides no reasoning, case law[3] or authority[4] to support this assertion. The Court will deny Plaintiff's requests for a protective order forbidding Defendants' in-person deposition of Plaintiff. No later than three days from the date of this Order, Defendants shall provide Plaintiff, by email, three dates from which Plaintiff may choose to submit to an in-person deposition. Plaintiff shall notify Defendants of her choice no later than seven days from the date of this Order.

Next, Plaintiff seeks a protective order shielding her medical and behavioral health records from discovery. (Doc. 139 at 1–3.) But Plaintiff has placed this information at issue by claiming that Defendants' conduct caused her emotional and physical damages, including specific psychiatric ailments like depression. (*See, e.g.*, Doc. 1-1 ¶ 72.) She has also issued a third-party subpoena to her primary health provider for her own medical

---

[3] Plaintiff cites *Haviland v. Catholic Health Initiatives-Iowa, Corporation*, 692 F. Supp. 2d 1264 (S.D. Iowa 2010) for her proposition that "[c]ourts may regulate deposition manner where health and proportionality concerns exist." (Doc. 145 at 3.) That citation returns a completely different case that has nothing to do with depositions. After a more in-depth search, the Court located the case name referenced by Plaintiff, but under the citation of 692 F. Supp. 2d 1040. This case also had nothing to do with depositions or proportionality. *See id.* (affirming a magistrate judge's denial of a motion to compel and quash subpoenas for procedural defects). Plaintiff cites *Hallett v. Morgan*, 296 F.3d 732 (9th Cir. 2002) for a similar proposition (Doc. 138-1 at 2), but this case reviews prisoner conditions and depositions were never discussed. Plaintiff cites *Hyde & Drath v. Baker*, 24 F.3d 1162 (9th Cir. 1994) to support her argument that "[c]ourts routinely permit written depositions where oral examination would impose undue burden or risk harm." (Doc. 138-1 at 2.) But this case affirmed a dismissal sanction issued against a party that failed to appear for multiple in-person depositions. There was no written deposition at issue. Finally, Plaintiff cites *Seattle Times Company*, 467 U.S. at 34–36, for the premise that "[d]iscovery must be proportional and sequenced to avoid oppression, particularly where a party proceeds pro se." (Doc. 138-1 at 3.) While it is true that discovery must be proportional, it need not be sequenced even if a litigant is *pro se*, and *Seattle Times Company* does not support what Plaintiff purports it does.

[4] Plaintiff cites to Local Rule 26.1(f) (Doc. 138-1 at 3). No such rule exists in this District. This and the previous footnote illustrate the point the Court has repeatedly made in the instant Order and in its previous discovery dispute resolution order (Doc. 132). The Court devotes the time necessary to thoroughly evaluate the assertions each party makes to correctly decide each phase of the nearly 500 matters it is managing at this point. That includes taking the time to verify the factual claims a party makes and the citation of legal authority a party says supports those claims. When a party refers the Court to rules that don't exist or causes it to hunt for cases that are mis-cited, or to read a case that doesn't stand for the legal proposition the party said it does, there is damage and there is cost. The Court's scarce time has been diverted to non-productive effort that has not advanced the instant case or any of the scores of other cases awaiting a decision in that moment, and the litigant who has so diverted the Court has suffered a loss to their credibility the next time they assert that a fact is so, or that a case stands for a certain proposition, or what a certain party did or did not do in discovery.

- 8 -

records (Doc. 90-2), but has not yet produced those records to Defendants despite their discovery request for the same. (*See* Doc. 148 at 4–5; Doc. 148-1 at 43.) Plaintiff argues that her alleged damages "do not constitute a blanket waiver of medical privacy or justify wholesale discovery of medical records." (Doc. 139 at 1–2.) But Defendants are entitled to seek discovery of the damages she claims. Defendants' discovery into her medical records held by the doctor and hospital she identified as having discoverable information and whom she subpoenaed herself is neither irrelevant nor unproportional. Plaintiff also sets forth no injury resulting from this discovery aside from causing general "undue burden and harm" (*Id.* at 3). This is the kind of unspecified injury that fails to establish good cause in the Ninth Circuit. *See Beckman Indus.*, 966 F.2d at 476. The Court will deny her request for a protective order prohibiting discovery of her medical and behavioral health records.

Plaintiff seeks a third protective order shielding her Wells Fargo financial records from discovery. (Doc. 139 at 1.) Plaintiff has placed her financial records in dispute by alleging, *inter alia*, that she made timely mortgage payments (Doc. 1-1 ¶ 11(f)–(j)), which Defendants deny (Doc. 46 ¶ 11(f)–(j)). Curiously, this Court already granted Plaintiff leave to serve her own subpoena on Wells Fargo. (Doc. 90-1.) Therein, she demanded production of "mortgage payment records," "transactional records," "correspondence . . . between Wells Fargo and Plaintiff," and "account records" regarding payments made upon the loans at issue. (*Id.* at 5–6.) Plaintiff clearly believed that her own financial records were relevant and proportional to this litigation. Plaintiff offers no particularized or articulated harm except that discovery "would be intrusive," which is directly contradicted by her own subpoena of those records. The Court will deny Plaintiff's request for a protective order regarding her Wells Fargo financial records.

Next, Plaintiff seeks a protective order shielding her father's medical records from discovery. (Doc. 139 at 1, 3.) Based on the correspondence both parties attached to their respective filings, it appears that Plaintiff has characterized her own damages as those including the purported harm experienced by her father in relation to the alleged events underlying this lawsuit. No matter how the topic of Plaintiff's father's health arose, her

father is not a named party to this action and, as far as the Court is aware, Plaintiff is not her father's representative seeking to litigate his rights. His medical records are irrelevant to the claims and defenses of the parties. The Court need not enter a protective order to this effect, because such discovery exceeds the bounds of Rule 26(b)(1) and shall not take place. Likewise, Plaintiff should not and cannot claim her father's harm as her own damages as he is not a proper party to this action.

Lastly, Defendants request the Court enter Defendants' protective order draft—modeled after the court standard form—that provides the parties an established mechanism for avoiding the public filing and dissemination of confidential documents discovered or disclosed in this matter. (Doc. 151 at 2; Doc. 151-6.) Plaintiff has, in her own way, requested the same kind of protection. (Doc. 139-1 at 4.) Upon reviewing Defendants' proposed protective order and good cause appearing, the Court will grant Defendants' request. No later than five days from the date of this Order, Defendants will file a Notice of Filing with the Court and lodge a cleaned-up copy of their protective order draft for entry.

## IV.    PLAINTIFF'S MOTION TO QUASH SUBPOENAS

Under Rule 45(d)(3)(A), a court must quash or modify a subpoena that "(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." The general rule in the Ninth Circuit is that "a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action, unless the objecting party claims some personal right or privilege with regard to the documents sought." *Davenport v. SP Jedi, Inc.*, No. CV-18-02580-PHX-SMM, 2019 U.S. Dist. LEXIS 229314, *3 (D. Ariz. Apr. 19, 2019). Alternatively, "[s]ome courts have entertained a party's challenges to non-party subpoenas based on relevance or proportionality in the context of a motion for a protective order under Rule 26." *M.S. v. Angus*, No. 2:23-cv-09957-MWF-MAR, 2025 U.S. Dist. LEXIS 53252, at *9 (C.D. Cal. Feb. 11, 2025) (collecting cases).

. . .

Plaintiff urges the Court to quash fifteen subpoenas issued by Defendants to third parties or, alternatively, to issue a protective order "barring further improper subpoena practice" because the subpoenas "exceed Rule 26's relevance and proportionality limits" and seek duplicative material already produced by Plaintiff. (Doc. 143 at 1, 3.) Plaintiff claims—and Defendants do not dispute—that Defendants seek Plaintiff's employment, financial, tax, medical, and police records dating back to 2015 despite the alleged events underlying this litigation beginning some time in 2022. (*Id.* at 1–2.) Defendants respond that their subpoenas—which have not yet been issued—will be addressed to the same third parties that Plaintiff subpoenaed herself or who Plaintiff identified as having discoverable information in her initial disclosure statement. (*See* Doc. 148 at 4–5; Doc. 148-2 at 2–10.) According to Defendants, Plaintiff has not provided them copies of her subpoenaed material despite Defendants' discovery request for the same. (*See* Doc. 148 at 4–5; Doc. 148-1 at 43.) The Court notes that the bulk of Plaintiff's subpoenas were issued on October 23, 2025 (Doc. 90), and two more were issued on December 10, 2025 (Doc. 134.) Each subpoena demanded production of documents within fifteen days of service. While Plaintiff argues that the subpoenaed materials are forthcoming, she provides no proof that the subpoenaed third parties have delayed production of documents that have already come due. Defendants, therefore, intend to subpoena that material themselves.

Because Defendants have not issued their subpoenas, there is nothing for the Court to quash. Even if there was, Plaintiff lacks standing to quash Defendants' subpoenas because she identifies no privilege[5] or personal right[6] to the information that she has placed squarely at issue in her Amended Complaint or subpoenaed for her own purposes.

---

[5] Plaintiff cites *Fitzgerald v. Cassil*, 216 F.R.D. 632 (N.D. Cal. 2003) to argue that Defendants are not entitled to "wholesale disclosure of psychiatric files." (Doc. 150 at 4.) The court in *Fitzgerald* applied a "narrow" approach to waiver of the federal psychotherapist-patient privilege. 216 F.R.D. at 636. First, the Court is not persuaded that federal common law of privilege applies because Plaintiff brings only state law claims. *Id.* at 635. Second, Plaintiff does not assert that her medical records are protected by this privilege, let alone meet her burden of demonstrating that she did not waive that privilege by claiming emotional distress damages. *Id.* at 636.

[6] Plaintiff discusses at great length that Defendants' subpoenas will harm her adult veteran children, but none of Defendants' proposed subpoenas are directed toward her adult children (*see* Doc. 150-8). Even if they were, Plaintiff's adult children are not parties to this action, so Plaintiff's attempt to quash subpoenas on their behalf contravenes the

Nonetheless, Plaintiff demonstrates good cause in limiting discovery to the relevant timeframe of the alleged events underlying this matter. Defendants do not address Plaintiff's concerns about—or provide justification for—the temporal overbreadth of discovery dating back to 2015. Accordingly, the Court will enter a protective order limiting discovery. Neither party identified a specific date range for the Court's consideration, so the Court will establish the temporal waypoints of discovery as follows: (1) information related to Plaintiff's financial records, tax records, and employment records is discoverable beginning the start of the calendar year in which Plaintiff entered the mortgage at issue; (2) information related to Plaintiff's medical records is discoverable beginning six months prior to the start of the calendar year in which Plaintiff entered the mortgage at issue; and (3) information related to Plaintiff's police records is discoverable as originally contemplated without further limitation. Should a category of information arise that is different from the ones listed above, the Court encourages the parties to use these standards as a reference for determining the relevant timeframe on their own without court intervention.

V. **MOTION FOR STAY**

Finally, Plaintiff requests the Court to stay discovery until it resolves her motions (Doc. 145).[7] Those motions are resolved, so the Court will deny Plaintiff's request as moot.

VI. **COURT EXPECTATIONS**

As a final matter, the Court addresses the growing degree of indifference Plaintiff has displayed towards the Court's rules, orders and expectations. In previous chapters, Plaintiff has misstated and defied the Court's orders (Doc. 61 at 3; Doc. 129 at 2), raised unfounded allegations of misconduct against opposing counsel (Doc. 132 at 3) and

---

purpose and procedures of Rule 45.
[7] Plaintiff argues that "[i]rreparable harm may result from premature disclosure of medical or financial records, particularly of non-parties" and cites *Seattle Times Co.*, 467 U.S. at 35, for support. (Doc. 145 at 3.) But nowhere does the Supreme Court discuss, or even reference, the harm of premature disclosure. She also cites *Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D. Cal. 1990) for the proposition that "[p]ending motions justify a pause to avoid inconsistent rulings and wasted effort." (Doc. 145 at 3.) *Gray* holds just the opposite. 133 F.R.D. at 40 (denying a stay while motions to dismiss remained pending).

1  inundated this Court with frivolous filings (*see* Doc. 132 (discussing satellite filings)). In
2  attributing Plaintiff's conduct to her *pro se* status, Court provided Plaintiff "one more
3  limited opportunity to conform to the Court's stated expectations of following the rules and
4  the Court's orders while maintaining civility and professionalism." (*Id*. at 3.)

5  Even against this backdrop, Plaintiff now obstructs Defendants' ability to depose
6  her and discover relevant information central to her allegations, falsely denies that she
7  deliberately altered Defendants' discovery requests, seeks court intervention for matters
8  that Defendants were actively attempting to resolve with her, and misrepresents authorities
9  and case law in seeking that intervention (*see* footnotes 3–5, 7 *supra*). Much of the relief
10 Plaintiff requests arose from her own actions, such as characterizing her damages to include
11 her father's medical harm, refusing to disclose subpoenaed information despite
12 Defendants' discovery request for the same, and rebuffing Defendants' attempts to jointly
13 move the Court to enter a protective order. Plaintiff's conduct no longer borders
14 unreasonableness forgivable by her *pro se* status. Her conduct has devolved into
15 gamesmanship unbecoming of the explicit expectations set by the Court.

16 Plaintiff hereby exhausts her one last opportunity to conform to the Court's
17 expectations, rules, and orders. Should she violate any court order or rule, continue to
18 inundate the Court with frivolous filings, misrepresent law or authority in her briefing, or
19 obstruct the discovery process further, the Court will order Plaintiff to show cause why the
20 Court should not issue monetary sanctions, evidentiary sanctions, or both against her.

21 While Defendants demonstrated consistent attempts to cooperate with Plaintiff and
22 address her many concerns, they have not remained completely above the fray. As Plaintiff
23 relates and Defendants do not contest, Defendants have proposed the issuance of subpoenas
24 for information well outside relevant temporal parameters. Defendants did not attempt to
25 defend their expansive timeframe, and this Court found it necessary to curtail that
26 discovery. The Court denies Defendants' current request for fees, costs and sanctions (Doc.
27 148 at 6–7).

28 . . .

**IT IS ORDERED** denying Plaintiff's Motion for Protective Order Regarding Defendants' Request for Oral Deposition Pursuant to FRCP 26(C), 30(D)(3), LRCiv 26.1(F), Plaintiff's Motion for Protective Order Regarding Medical Records and Financial Records, and Plaintiff's Emergency Motion for Protective Order and to Temporarily Stay Discovery and Deposition Pending Court Resolution (Docs. 138, 139, 145).

**IT IS FURTHER ORDERED** granting in part and denying in part Plaintiff's Emergency Motion to Quash Defendants' Improper Third-Party Subpoenas and For Protective Order (Doc. 143). Discovery of information shall be limited to the following timeframes: (1) information related to Plaintiff's financial records, tax records, and employment records is discoverable beginning the start of the calendar year in which Plaintiff entered the mortgage at issue; (2) information related to Plaintiff's medical records is discoverable beginning six months prior to the start of the calendar year in which Plaintiff entered the mortgage at issue; and (3) information related to Plaintiff's police records is discoverable as originally contemplated without further limitation.

**IT IS FURTHER ORDERED** striking Plaintiff's Notice Regarding Discovery Compliance, Defective Subsequent Requests, and Preservation of Record and Notice of Abusive and Improper Service of Purported Discovery Responses and Continuing Litigation Abuse (Docs. 155, 156).

**IT IS FURTHER ORDERED** that, no later than five days from the date of this Order, Defendants shall file a Notice of Discovery Deficiencies with the Court identifying with precision each discovery request that was not answered or was altered by Plaintiff to date, or for which production of documents (if requested) has not been completed. No later than ten days of the notice, Plaintiff shall respond to each discovery request identified in Defendants' notice without altering the requests and produce the requested material. Plaintiff shall provide those responses and documents directly to Defendants. No later than three days of providing her responses and documents to Defendants, Plaintiff shall file a Notice of Compliance with the Court without any attachments. No later than seven days after Defendants receive the responses, they shall file a notice of certification of Plaintiff's

1  compliance listing all requests they deem Plaintiff to have complied with and, if necessary,
2  a motion for sanctions identifying any requests Plaintiff has not complied with, along with
3  Defendants' basis for so concluding.
4        **IT IS FURTHER ORDERED** that, no later than three days from the date of this
5  Order, Defendants shall provide Plaintiff, by email, three dates from which Plaintiff may
6  choose to submit to an in-person deposition. Plaintiff shall notify Defendants of her choice
7  no later than seven days from the date of this Order.
8        **IT IS FURTHER ORDERED** that, no later than five days from the date of this
9  Order, Defendants will file a Notice of Filing with the Court and lodge a cleaned-up copy
10 of their protective order draft for entry.
11       **IT IS FURTHER ORDERED** denying Defendants' request for attorney's fees and
12 costs, and for sanctions.
13       Dated this 6th day of January, 2026.

Honorable John J. Tuchi
United States District Judge