**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Chidinma Grace Salako, | No. CV-25-01063-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Rushmore Loan Management Services LLC, *et al.*, | |
| Defendants. | |

Before the Court are the latest host of discovery-related filings in this matter: Defendants Rushmore Loan Management Services LLC and Nationstar Mortgage LLC's Notice of Noncompliance and Motion for Sanctions (Doc. 171); four discovery disputes (Docs. 190–93, 195, 210, 212); Plaintiff's Motion to Compel Continuation of Rule 30(b)(6) Deposition and for Award of Costs (Doc. 200); and Defendants' Objections to Plaintiff's Pretrial Disclosures (Doc. 207). These filings have been fully briefed and resolution without oral argument is appropriate. *See* LRCiv 7.2(f).

## I.    BACKGROUND

At the center of this dispute is a home loan. According to Plaintiff, she made regular payments on her home loan, sometimes more than what was owed and other times not enough, but she promptly corrected any deficiencies and kept current with her loan obligations. (Doc. 1-1, FAC, ¶ 11(b)–(c).) At some point, Plaintiff received a notice from Nationstar that Plaintiff was no longer current on the loan. (*Id*. ¶ 11(d).) More notices of deficient payments were issued to Plaintiff. (*Id*. ¶ 11(e)–(g).) What resulted, according to

Plaintiff, was an accumulated payment deficiency that increased the amount due on her loan and dropped her credit score from a 755 score to 600. (*Id*. ¶ 11(n).) Plaintiff alleges that Defendants' multiple notices, threats of foreclosure, and physical presence at her residence to harass her caused her emotional distress. (*Id*. ¶ 11(o)–(p).) Plaintiff sued Defendants on eleven claims. Eight of those claims survived a partially successful motion to dismiss: (1) breach of contract, (2) breach of the covenant of good faith and fair dealing, (3) negligence, (4) fraudulent misrepresentation, (5) negligent misrepresentation, (6) fraudulent concealment, (7) declaratory relief, and (8) intentional infliction of emotional distress. (*See* Doc. 43.)

On November 12, 2025, Defendants each served three sets of discovery requests that included one set of requests for admission ("RFAs"), one set of requests for production ("RFPs"), and one set of interrogatories, for a total of six sets. (Doc. 163-1 at 2–9, 16–27, 34–45, 73–81, 95–107, 141–52.) Plaintiff served her original responses to Defendants' discovery requests between November 30, 2025 and December 16, 2025, except for Nationstar's interrogatories, which remained unanswered. (Doc 163-1 at 11–14, 29–32, 47–71, 83–93, 109–39).

On December 30, 2025, the parties filed their Joint Discovery Dispute Statement No. 2 ("Second Discovery Dispute") (Doc. 151), wherein Defendants argued that Plaintiff altered or failed to answer Defendants' discovery requests, withheld documents she received in response to subpoenas, refused to enter a protective order, and failed to provide her availability for an in-person deposition. Around the time the parties filed that dispute, Plaintiff filed multiple motions for protective orders to prevent in-person depositions of herself and her father, to shield her medical and financial records, and to temporarily stay discovery (Docs. 138, 139, 143, 145). After these filings, Nationstar served its second set of RFPs. (Doc. 191 at 1–2.)

On January 6, 2026, the Court issued an Order (Doc. 159) addressing the parties' Second Discovery Dispute and the various motions filed by Plaintiff. Upon review, the Court found that Plaintiff "acted unreasonably to obstruct Defendants' discovery efforts"

by, *inter alia*, altering Defendants' discovery requests, refusing to provide deposition availability, and refusing to sign a standard protective order that she previously asked for. The Court admonished Plaintiff for obstructive conduct and making misrepresentations in both fact and law, and warned of potential monetary and evidentiary sanctions for future violations. But Defendants had "not remained completely above the fray" (Doc. 159 at 13), and the Court noted that some of their discovery requests were overbroad as to the timeframe. Ultimately, the Court denied Plaintiff's various motions, limited the temporal scope of discovery to the underlying home loan at issue, and ordered a compliance protocol to cure Plaintiff's discovery obstruction.

In the three months that followed the Court's January 6, 2026 Order, Defendants moved for sanctions resulting from Plaintiff's noncompliance with the Order, the parties have filed four more discovery disputes, Plaintiff moved to compel a deposition, and Defendants filed an objection to Plaintiff's pretrial disclosures upon the close of discovery. The sheer volume of disputes filed in a short time proves once more that effective management of this matter is a Sisyphean task. Nonetheless, the window of discovery has now closed, leaving only these pending motions and disputes before the parties turn to dispositive motion practice. The Court now turns to those filings.

## II.     MOTION FOR SANCTIONS

On January 9, 2026, Defendants filed their Notice of Discovery Deficiencies pursuant to the January 6, 2026 Order, identifying the discovery requests that were answered deficiently, altered, or unanswered. (Doc. 163.) From January 8 to January 18, 2026, Plaintiff amended her discovery responses. Specifically, she amended her responses three times to Rushmore's RFAs, twice to Rushmore's interrogatories and once each to Nationstar's RFAs, first set of RFPs, and interrogatories. (Doc. 172-1 at 74–189, 227–331; Doc. 181-1 at 28–32.) No amended response to Rushmore's RFPs was provided during this time, although Plaintiff later informed Defendants' counsel on January 29, 2026 that her responses "were sitting in my draft and folder as well as my [Google Drive][1] folder shared

---

[1] Plaintiff maintains a Google Drive that she shares with Defendants and uploads her discovery responses and document production.

with you." (Doc. 181-1 at 21.) Defendants later argue to the Court that Plaintiff "fabricated" this document, because the metadata of that file shows that it was created that day, and was not "sitting" in the Google Drive as Plaintiff implied. (Doc. 181-1 at 21.)

On January 19, 2026, Plaintiff filed a notice with the Court stating that she fully complied with the January 6, 2026 Order. (Doc. 167.) Defendants, however, contend otherwise and subsequently filed their Motion for Sanctions detailing what they view as all the incidences of Plaintiff's noncompliance and noncooperation. (Doc. 171.)

Careful review of Plaintiff's amended discovery responses reveals that Plaintiff has obstructed discovery into her health records and information. She repeatedly objected to producing or providing that information on the grounds of "medical privacy, "privilege," and "confidentiality." (*See, e.g.*, Doc. 172-1 at 102, 170.) These objections are a continuation of Plaintiff's earlier attempts to shield her health records from discovery that the Court denied in the January 6, 2026 Order (Doc. 159 at 8–9, 12), and the Court denies them again. Defendants are entitled to Plaintiff's health records and information to evaluate her damages, which she has repeatedly claimed, albeit vaguely, as worth potentially millions of dollars.

Aside from casting groundless objections, Plaintiff responded to Rushmore's interrogatory that she "has received medical and mental health treatment" and was formally diagnosed with "Severe Major Depression and Uncontrolled Generalized Anxiety Disorder, among other related emotional distress symptoms (such as panic attacks and insomnia)," which were identified and treated "in early 2023 and has been ongoing since that time, including regular therapy sessions and prescribed medications to manage depression and anxiety." (Doc. 172-1 at 309–10.) Despite this, Plaintiff produced only sixty-one pages of medical notes from her primary care provider dated ***after*** February 2025. (Doc. 172 ¶¶ 30–32; *see also* Doc. 181-1 at 34–35.) She has also provided no accounting of or documents to support medical expenses for, *inter alia*, prescriptions or therapy (*see* Doc. 172-1 at 112), despite responding to both Defendants' interrogatories that she incurred medical expenses (*see* Doc. 172-1 at 107, 111, 147–49). When Defendants made

clear that they were going to subpoena her medical provider for more complete records, Plaintiff contacted her primary care physician to warn that Defendants would submit a paper "with a forged signature" to request her medical records. (Doc. 181-1 at 9.)

Next, Plaintiff repeatedly represents in her discovery responses and communications with Defendants' counsel that she has produced her credit report reflecting the damage to her credit score. But Plaintiff's actual discovery responses tell a different story. She has objected to producing her credit reports dating back to January 2022, asserting that the request is "irrelevant and not proportional" (Doc. 172-1 at 169) despite claiming that her credit score dropped 155 points sometime during the loan period (*id*. at 112). She also responded that "Defendants may obtain their own credit data directly from the credit bureaus" (*id*. at 169) but later refused to provide Defendants an authorization for her credit report, stating: "I have already produced the Equifax response itself. The Court did not order me to execute additional authorizations for Defendants' subpoenas, and I do not consent to signing forms beyond what is required by law or court order" (*id*. at 362–63). Based on the papers submitted by both parties, it appears that the "credit reports" Plaintiff disclosed constitute five printouts of portions of her credit report. (Doc. 171 at 7 n.3; Doc. 181-1 at 51.) Later, on February 1, 2026, Plaintiff emailed Defendants a "3-Bureau Credit Full Report" (Doc. 181-1 at 49) that, according to Defendants, is yet another selective printout of Plaintiff's credit report portal. (Doc. 180 at 7 n.12.)

Perhaps most alarming to the Court is that, despite its Order otherwise, Plaintiff *__twice__* altered Rushmore's RFAs in amending her responses. (*Compare* Doc. 172-1 at 52–59 (original RFA request) *with* Doc. 172-1 at 264–69 (January 16 response) *and* Doc. 181-1 at 28–32 (response dated January 13 but sent January 29).) For instance, Rushmore's second RFA asks Plaintiff to "[a]dmit Rushmore is not a party to the Note." (Doc. 172-1 at 55.) Plaintiff changed that request to "[a]dmit that the Promissory Note was secured by a Deed of Trust recorded against the Property" (Doc. 181-1 at 28), then to "[a]dmit Rushmore serviced Plaintiff's loan at some time" (Doc. 172-1 at 264). This is not

accidental. Plaintiff's first amended response—albeit incomplete[2]—demonstrates that she could respond to the requests as originally stated (*see* Doc. 172-1 at 115–17) but she nonetheless proceeded to alter the requests in her second and third amended responses. The most recent response submitted by Plaintiff, which was dated January 13 but provided to Defendants on January 29, reflects that every single RFA was altered far beyond the original premise of the requests. (*See* Doc. 181 at 22–29). Each request goes to the heart of Plaintiff's claims against Rushmore, and her recurrent alterations of those requests can only be interpreted as being done willfully.

While Plaintiff did not alter any of Nationstar's RFAs, Defendants still take issue with her amended response. According to Defendants, Plaintiff improperly denies basic facts about the original loan documents that Defendants attach to their Motion for Sanctions. For example, Nationstar's second RFA states that "the interest rate on the Note is 3.500% per annum," which Plaintiff denied because the statement omitted the term "fixed," "amortized," and "non-variable." (Doc. 172-1 and 231.) But the Note clearly states that Plaintiff "will pay interest at a yearly rate of 3.500 %" without reference to the terms "fixed," "amortized," and "non-variable." (*Id*. at 365).

In Plaintiff's other responses, she essentially admits the substance of the admission despite calling it a denial. For example, Nationstar's tenth RFA asks Plaintiff to "[a]dmit Nationstar is not named as a party in the Deed of Trust," which Plaintiff denies but writes, "while Nationstar [] is not named as a party in the Deed of Trust . . ." and proceeds to argue that Nationstar undertook servicing responsibilities when it later became the loan servicer. (*Id*. at 249.) Nationstar's RFAs 2 through 5 and 7 through 10[3] are proven true by the text of the original loan documents attached to Defendants' Motion for Sanctions, and Plaintiff's denial of those admissions is improper.

However, RFAs 11 through 17, 20 and 21 call for an admission that is not proven true by the documents provided by Defendants. For example, Nationstar's fourteenth RFA

---

[2] Plaintiff responded only to Rushmore's RFAs numbers 11 through 15 in her first amended response.

[3] Plaintiff admitted Nationstar's RFAs 1, 6, 18 and 19, so the Court need not address those.

asks Plaintiff to admit that the required monthly loan payment was $2,217.48, which Plaintiff disputes on the basis that the amount due was incorrect and a breach of her contract. The transaction history provided by Defendants shows only the amount Plaintiff paid every month and how that payment was applied to the loan. It does not show the "required" amount due or reflect any amount of truth as to the other statements made in these particular RFAs. Defendants having failed to prove the matter of these admissions as true, the Court cannot conclude that Plaintiff's denial as to those RFAs are improper.

Other documents submitted by Defendants in support of their Motion for Sanctions demonstrate that Plaintiff has been difficult, if not outright noncooperative, in other aspects of litigation, including: issuing a 30(b)(6) deposition notice to take place as early as three days later without requesting availability beforehand (*id*. at 339–41); objecting to the deposition of Michael Hadenfeldt (*id*. at 338–39) despite filing his declaration that he could "testify to . . . [Plaintiff's] emotional state" during a relevant period (*see* Doc. 110-2); withdrawing several witnesses after Defendants sought discovery into relevant communications and noticed their depositions; declining to provide Defendants' counsel her availability to reschedule her deposition after Defendants received her amended discovery responses; and maintaining a disorganized and ever-changing Google Drive for produced documents (Doc. 171 at 9, 14).

Defendants request that, as a sanction for Plaintiff's discovery misconduct, this matter be terminated pursuant to Federal Rule of Civil Procedure 37(b)(2)(A)(v) or alternatively that their RFAs be deemed admitted under Rule 37(c)(2) and they be awarded their reasonable fees and costs. (*Id*. at 2.)

Against that backdrop, the Court now evaluates whether Plaintiff's discovery misconduct warrants sanctions and, if so, what kind. Rule 37 sanctions serve three general purposes: (1) they ensure that a party does not profit from its failure to comply with the Rules; (2) they secure compliance with court orders; and (3) when the most drastic sanctions are imposed, they deter the noncomplying party and others from failing to comply in the future. *U.S. v. Sumitomo Marine & Fire Ins.*, 617 F.2d 1365, 1369 (9th Cir.

1980). It "authorizes the district court, in its discretion, to impose a wide range of sanctions when a party fails to comply with the rules of discovery or with court orders enforcing those rules." *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 589 (9th Cir. 1983) (citations omitted).

One of the sanctions available to the Court is "dismissing the action or proceeding in whole or in part." Fed. R. Civ. P. 37(b)(2)(A)(v). When deciding whether to terminate an action under this Rule, the Court must weigh five factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the other party; (4) the public policy favoring the disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Dreith v. Nu Image, Inc.*, 648 F.3d 779, 788 (9th Cir. 2011) (citations omitted). Because the first two factors generally favor sanctions, and the fourth factor disfavors default or dismissal, the key factors are prejudice and the availability of lesser sanctions. *Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir. 1990). Additionally, a terminating sanction may not be imposed unless the noncomplying party acted willfully or in bad faith. *Sigliano v. Mendoza*, 642 F.2d 309, 310 (9th Cir. 1981).

The first two factors clearly weigh in Defendants' favor. Terminating this matter would certainly be expeditious and enable the Court to manage its docket after spending a disproportionate amount of time and resources to oversee it.

Regarding the third factor, Defendants argue that it is prejudiced by incurring attorneys' fees to overcome Plaintiff's discovery misconduct and by Plaintiff's failure to provide information supporting her $50 million damages claim. (Doc. 171 at 20.) In response, Plaintiff argues that she acted in good faith, responded to every discovery request and produced voluminous documents. (Doc. 174). The papers submitted to the Court, however, show otherwise. She has produced piecemeal health and credit report records, evaded requests for information about her health and credit damages, then flagrantly obstructed Defendants' ability to obtain more complete versions of those records. (*See* Doc.

181-1 at 9 (informing medical provider of forged document); Doc. 172-1 at 362–63 (refusing to provide credit report authorization).)

Next, Plaintiff disagrees that Defendants are prejudiced because they had access to the documents she produced in a shared Google Drive. But no amount of access to her Google Drive cures the prejudice to Defendants where the documents within it are incomplete, non-responsive as to her claim for damages, and apparently being constantly altered or updated. She then accuses Defendants of making comparable discovery errors by repeatedly using the number "64" when numbering its second set of RFPs. Even if true, such an error does not excuse Plaintiff from complying with her own discovery obligations and this Court's January 6, 2026 Order.

While the Court agrees that prejudice to Defendants exist, Defendants have not shown that prejudice is so severe as to necessitate dismissal. "The most critical criterion for the imposition of a dismissal sanction is that the misconduct penalized must relate to matters in controversy in such a way as to interfere with the rightful decision of the case." *Halaco Eng'g Co. v. Costle*, 843 F.2d 376, 381 (9th Cir. 1988) (citations omitted). A court's primary focus of whether the misconduct warrants dismissal is not "merely delay or docket management concerns, but truth." *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1097 (9th Cir. 2007). Dismissal is imposed when a "party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings," *Anheuser-Busch, Inc. v. Nat. Beverage Distributors*, 69 F.3d 337, 348 (9th Cir. 1995) (citations omitted), such as destroying critical evidence, *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959–60 (9th Cir. 2006), failing to produce documents as ordered, *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir. 1990*)*, or repeatedly threatening violence against an opposing party, *Ewing v. Freedom Forever, LLC, No. 23-CV-1240 JLS (AHG)*, 2024 WL 4668144, at *3 (S.D. Cal. Nov. 4, 2024).

The misconduct here fits few or none of those categories. None of the evidence at issue was destroyed. Defendants eventually obtained Plaintiff's full medical records from Banner Health. As for the credit reports, the Court is not persuaded that Defendants were

completely prevented from obtaining them. While Plaintiff wrongly refused to authorize the release of her credit reports to Defendants, they could have, but did not, seek a court order for the same. And based on the papers submitted, it is unclear whether Plaintiff ever had the full credit reports in her possession, in response to a subpoena or otherwise. The prejudice here was significant, but the quantum of evidence to show bad faith simply does not rise to the level of dismissal, though it still weighs in favor of other, albeit lesser, sanctions discussed *infra*.

The fourth factor is the public policy favoring disposition on the merits, which strongly counsels against dismissal. *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1228 (9th Cir. 2006). However, this factor lends little support to a party that impedes the progress of a case toward a decision on the merits. *Id*. Plaintiff's conduct has done exactly that. Thus, this factor also weighs only slightly against terminating sanctions.

The fifth and final factor requires the Court to consider less drastic sanctions. In the Court's estimation, there are a few that, when combined, will sufficiently cure the prejudice caused by Plaintiff's discovery misconduct. First, it is appropriate that Rushmore's RFAs 1 through 15 and Nationstar's RFAs 2 through 5 and 7 through 10 are deemed admitted pursuant to Rule 37(c)(2) for the reasons set forth above. It is also appropriate that Plaintiff be precluded from offering evidence for any purpose in her case-in-chief of health records (including medical or therapy records, notes and invoices, prescriptions, and related costs) and credit score records as a result of her substantial and ongoing obstruction of Defendants' access to that information. The remedy eliminates Defendants' prejudice arising from lack of production of those records.

It is not lost on the Court that Plaintiff's discovery tactics and continued defiance of Court Orders have forced Defendants—and this Court—to spend copious additional time and resources to address that misconduct. And the Court agrees with Defendants that the sanctions imposed here should deter future misconduct and prevent Plaintiff from profiting from her gamesmanship. Of the various Rule 37 sanctions at the Court's disposal, the Court

is inclined to "inform the jury of the party's failure" to comply with court orders and the Rules. Fed. R. Civ. P. 37(c)(1)(B); *see also* Fed. R. Civ. P. 37(b)(2)(A) (allowing the Court to "issue further just orders" when a party fails to obey a discovery order). Because Plaintiff's behavior throughout discovery demonstrates an attempt to escape her responsibility to provide the material she would use at trial to support her medical and credit score damages, the Court finds it fitting to inform the jury of this conduct, in the form of a spoliation instruction, if or when this matter proceeds to trial. The Court further finds that this sanction should serve to prevent Plaintiff from profiting from her misconduct and dissuade future parties from committing such misconduct in the future. Because sufficient, less drastic sanctions are available, the fifth factor weighs strongly against imposing terminating sanctions.

Were the five factors so evenly balance in the end, the Court will choose the less drastic sanction in its discretion. It will not terminate the case.

Finally, Defendants request their attorney's fees and costs. Rule 37 mandates an assessment of reasonable expenses against the party who disobeyed a discovery order unless the failure was substantially justified or other circumstances make an award unjust. Plaintiff sets forth no reason for her repeated alterations of Rushmore's RFAs, evasive responses of Nationstar's RFAs, and obstruction of Defendants' attempts to obtain more complete medical and credit score records, to which they are entitled under the discovery rules. She also presents no circumstances that would make an award unjust. Nonetheless, the Court holds its decision as to monetary sanctions in abeyance until the resolution of this matter.

## III. THIRD DISCOVERY DISPUTE

On January 5, 2026, Nationstar served its second set of RFPs. (Doc. 191-2.) Plaintiff responded ten days later. (Doc. 191-1.) Defendants notified Plaintiff of several deficiencies in her response on January 20, 2026 (Doc. 191-3), and after no agreement was reached as to those deficiencies, the parties filed their Joint Discovery Dispute Statement No. 3 ("Third Discovery Dispute") (Doc. 191).

Defendants first argue that Plaintiff improperly asserts a "family communications privilege" objection to producing communication between herself and family members whom she originally identified in her disclosures as having knowledge of her emotional distress damages. (Doc. 191 at 2.) In response, Plaintiff argues that those communications were irrelevant and "highly intrusive." But at the time the second set of RFPs were served and answered, Plaintiff disclosed those family members as having knowledge of her emotional distress. Only two days after receiving Defendants' deficiency letter, Plaintiff withdrew several family members as witnesses, apparently in hope of rendering their communications irrelevant for discovery purposes. But discoverability depends on more than just witness status. While those family members may no longer testify as part of Plaintiff's case-in-chief, Plaintiff's own representations made to her family members regarding emotional distress and Defendants' purported trespass on her property are still relevant to the claims and defenses at issue. Plaintiff's attempt to shield this evidence reflects a pattern of making grand but ambiguous statements regarding her damages, refusing to disclose evidence that would support those damages when it is rightfully sought, then retracting her statements only after the bootless errand ensues. Ultimately, Defendants are entitled to discover evidence of Plaintiff's alleged "emotional distress and fear" related to Defendants' alleged acts that, according to Plaintiff herself, was communicated to her family members. Plaintiff shall produce all documents responsive to Nationstar's second set of RFPs 26 through 30 no later than fourteen days from the date of this Order.

Second, Defendants argue, and Plaintiff contests, that Plaintiff failed to produce full responses that she received from third parties in response to her earlier subpoenas. As far as Defendants report, their respective subpoena productions are markedly different. Plaintiff received sixty-one pages from her medical provider Dr. Sweet while Defendants received over 3,000 pages from Banner Health. (Doc. 180 at 5–6.) Plaintiff received a "handful" of documents from the original home loan servicer while Defendants received hundreds. (Doc. 171 at 12.) Plaintiff received two documents from the Maricopa Police Department while Defendants received twenty-four. (Doc. 171 at 12.) But Defendants do

not explain how the parties' respective subpoenas to these entities differed and whether such differences could have affected the scope of documents produced. Based on the information presented, any conclusion that Plaintiff failed to produce subpoena responses would be purely speculative. Accordingly, the Court declines to find any discovery deficiency on the part of Plaintiff as it relates to the production of subpoena responses. In any event, ordering Plaintiff to produce additional documents would be futile and likely duplicative as Defendants have received their own subpoena production from the same entities.

Next, Defendants argue that Plaintiff refuses to provide substantiation for her $50 million damages claim. This deficiency, however, is sufficiently cured by the Court's present order precluding evidence Plaintiff might have used to prove her emotional damages and mandates production of family communications regarding emotional distress. What remains are compensatory damages, which are likely ascertainable by the payment documents and bank records already produced. The Court declines to take further action on this issue.

Lastly, Defendants argue that Plaintiff improperly asserts attorney-client privilege to communications with opposing counsel in an earlier and unrelated employment termination litigation. According to Defendants, Plaintiff alleged in that employment litigation that she was "emotionally and mentally traumatized" by her termination and she was "unable to afford [her] mortgage" as a result. (Doc. 191 at 2–3.) Based on these allegations, Defendants contend that they "are entitled to explore whether Plaintiff's claimed inability to make mortgage payments and emotional distress was caused by her simultaneous employment dispute, termination, and lack of income rather than Defendants' conduct." (*Id*. at 3.) Plaintiff provides no response on this point. The Court agrees with Defendants, and orders Plaintiff to produce all documents responsive to Nationstar's second set of RFPs 66 through 73 no later than fourteen days from the date of this Order.

. . .

. . .

## IV.    FOURTH DISCOVERY DISPUTE

On February 9, 2026, Plaintiff filed a Joint Discovery Dispute ("Fourth Discovery Dispute") (Doc. 190). She argues that Defendants' notice of depositions of her adult children, Victor and Yemi Salako, are improper because she withdrew them as witnesses from her disclosure statement and they lack first-hand knowledge of loan or servicing issues, are not credible due to long-term addiction struggles, and have refused to participate or comply with those subpoenas. (*Id*.) Plaintiff also argues that Michael Hadenfeldt lacks relevant knowledge, describing him only as involved in a routine handyman visit and unrelated technical assistance, and contends his deposition would impose undue burden without benefit. (*Id*.) Defendants respond that Plaintiff lacks standing to challenge subpoenas to non-parties. (Doc. 192.) They also argue, and the record supports, that Victor and Yemi Salako and Michael Hadenfeldt were previously identified by Plaintiff as having personal knowledge emotional distress. (*See, e.g.*, Doc. 110-2.)

The Court twice held that Plaintiff lacks standing to quash subpoenas to non-parties (Docs. 159, 182). Notwithstanding those orders and the legal standard set forth therein, Plaintiff once again attempts to obstruct Defendants' subpoenas of non-parties who, according to Plaintiff's own earlier representations, have information relevant to this litigation. Accordingly, the Court declines to quash these non-party subpoenas to the extent they were issued. The Court again will defer its decision whether to award Defendants their attorney's fees and costs incurred resisting the Fourth Discovery Dispute until the conclusion of this matter.

## V.    FIFTH DISCOVERY DISPUTE

Also on February 9, 2026, Plaintiff filed her Joint Discovery Dispute Summary Statement (Medical Records Only) ("Fifth Discovery Dispute") and argues that Defendants incorrectly accused Plaintiff of withholding 98 percent of her Banner Health medical records. (Doc. 193.) Defendants argue, and the Court agrees, that this portion of Plaintiff's discovery dispute statement is a veiled argument directed at Defendants' reply to their Motion for Sanctions and is, effectively, an improper sur-reply. The Court disregards it.

Next, Plaintiff contends that Defendants have "declined" to disclose the 3,100 documents they received from Banner Health to Plaintiff. (Doc. 193.) The papers attached to Defendants' response show that Defendants *did* disclose all Banner Health documents through TitanFile, an electronic file sharing platform, just a few days prior to Plaintiff filing the Fifth Discovery Dispute. (Doc. 195.) Notwithstanding this disclosure, Plaintiff repeatedly accused Defendants' counsel of failing to provide her the link. Curiously, she demanded hard copies of the records despite taking a position earlier in this matter that she cannot read hard copies of documents due to a medical condition (Doc. 156) and calling the police to report harassment against Defendants' counsel in December after they attempted to send her hard copies of deficient discovery requests (Doc. 195-1 at 9). Based on the papers submitted by Defendants, the Court is persuaded that those Banner Health medical records were disclosed to Plaintiff and will take no action. The Court again defers its decision to award Defendants additional attorney's fees or costs arising from this Fifth Discovery Dispute until resolution of the entire matter.

## VI.    MOTION TO COMPEL

On March 24, 2026, Plaintiff took the deposition of Rushmore's Rule 30(b)(6) witness. That same day, she filed her Motion to Compel (Doc. 200), to which Defendants responded (Doc. 204), and Plaintiff replied (Doc. 205). As a threshold matter, the Court observes that Plaintiff, once again, ignored the Court's discovery dispute procedures despite having many opportunities to conform therewith. (*See* Doc. 57 ¶ 9.) Plaintiff also fails to comply with Rule 37's requirement that a motion to compel must include a meet-and-confer certification. Fed. R. Civ. P. 37(a)(1). Normally, the Court would deny or strike a noncompliant motion such as this one, which it has done many times in relation to Plaintiff's improper discovery filings. (*See* Doc. 129, 159, 182, 196.)

Because the Court has reviewed the Motion, related briefing, and entire deposition transcript (Doc. 203-1) already, and elects to address all remaining discovery issues now, in this Order, to move this matter along to the dispositive motion phase, it will address the motion here. The Court finds that Defendants' counsel Mr. Balser did not "improperly

impede" the deposition as Plaintiff contends. While Mr. Balser did object to the format of Plaintiff's exhibits, which either included a "cover page" containing Plaintiff's notations or were mixed with other exhibits, those objections were made in relation to Plaintiff's attempt to have that witness authenticate those exhibits. Because the exhibits were altered by Plaintiff, the objections to authentication were proper.

Plaintiff was free to ask other questions about the exhibits, or ask questions not based at all on the exhibits, but she did not. The transcript clearly shows that Mr. Balser provided Plaintiff with several opportunities to correct the exhibits, which she attempted to do once during a short break but was unsuccessful. Mr. Balser also offered sending the original version of the exhibit to Plaintiff for easier correction, which offer Plaintiff declined.[4] Ultimately, Plaintiff decided to end the deposition early, believing that she could reschedule it for another time. Mr. Balser made clear that he would object to rescheduling, but Plaintiff nonetheless discontinued the deposition. Finally, the deposition transcript does not support Plaintiff's contention that the witness was not properly prepared; rather, the witness simply had no substantive question to answer.

Unfortunately, having to wade through evidentiary objections, whether presented at a deposition or trial, is a risk that every *pro se* litigant takes in representing herself. Here, the objections were properly stated and counsel did not impede Plaintiff's ability to cure the defect giving rise to the objection or ask other questions. Plaintiff spent her opportunity to depose Rushmore's 30(b)(6) witness, and she will be afforded no more.

The Court here denies Defendants' request for their attorneys' fees and costs in having to respond to Plaintiff's Motion to Compel. While the Court has concluded Defendants committed no wrong in their conduct of the deposition, it also observes that the non-lawyer Plaintiff's misunderstanding of the objections and their effect in the context

---

[4] The Court notes that Mr. Balser was not required to provide Plaintiff grace by explaining what his objections meant, providing time to correct deficiencies, or offering limited assistance, but he did. The Court also commends Mr. Balser for attempting to resolve the many discovery issues now pending before the Court through interparty correspondence, with the help of Ms. Geyer. As officers of the Court, Mr. Balser and Ms. Geyser are bound to act ethically and responsibly. They have done so, and this does not go unnoticed.

of a deposition is not entirely unfounded. Objections made during a deposition are unlike those made at evidentiary hearings that are weighed and resolved in real time by a court. Rather, objections made during a deposition are made solely for the record to be revived sometime in the future or perhaps not at all, rendering them ominous and unresolved. This misunderstanding of how objections work in a deposition, compounded with the authentication issue that Mr. Balser correctly identified, could reasonably confuse a *pro se* litigant. It is understandable, then, that Plaintiff appealed to the Court for intervention—albeit through incorrect procedures. While her confusion is not an excuse that would warrant her a second bite at the apple, it does explain her action in a context of error due to unfamiliarity with litigation procedure, rather than an attempt at obstruction or other bad faith conduct.

**VII.    SIXTH DISCOVERY DISPUTE AND DEFENDANTS' OBJECTION**

The day before all discovery closed, Defendants filed an objection to Plaintiff's pretrial disclosures. (Doc. 207.) According to Defendants, most of Plaintiff's pretrial disclosures—originally served on March 26, 2026 and amended on April 3, 2026 and April 11, 2026—consist of a previously undisclosed witness from "ABC Care" and documents not previously disclosed, not sufficiently identified by description, date, or BATES label, or containing argumentative characterizations. (Doc. 207 at 4–7.) The next day, Defendants filed their statement of the Joint Discovery Dispute Statement ("Sixth Discovery Dispute") reiterating the same points. (Doc. 210.) Defendants argue that all of Plaintiff's exhibits and the ABC Care witness are marred by one or more of these deficiencies. (Doc. 207 at 4–7; Doc. 210.) Defendants urge the Court to exclude: (1) Plaintiff's Exhibits 54 through 57 that pertain to business-related damages; (2) any testimony about business-related damages; and (3) testimony from the ABC Care witness. Defendants also seek an order requiring Plaintiff to produce all other exhibits with BATES labels and without argumentative exhibit descriptions. (Doc. 210 at 2–3.)

In response, Plaintiff argues that Defendants are not prejudiced by her pretrial disclosure "because the vast majority of Plaintiff's exhibits consist of Defendants' own

business records, communications, monthly statements, servicing records, court-ordered productions, or third-party subpoenaed records already disclosed or known to Defendants." (Doc. 209 at 1–2.) She does not, however, address Defendants' contention that Exhibits 54 through 57 and the ABC Care witness were never disclosed until she filed her pretrial disclosure statement. Instead, Plaintiff contends that she acted in good faith and substantially complied with Rule 26 because she "identified exhibits by exhibit number, title/description, and page counts" and "[w]here clarification was needed, Plaintiff revised descriptions." (Doc. 209 at 2.) Plaintiff argues that Defendants' concerns "can be cured through supplementation rather than exclusion." (Doc. 209 at 2.) She repeats these points in her portion of the statement regarding the Sixth Discovery Dispute (Doc. 212).[5]

None of these arguments excuse Plaintiff from the mandate of Rule 26(a)(3). First, the fact that some—or perhaps a majority—of Plaintiff's exhibits are documents derived from Defendants' own production of records does not mean that she no longer needs to clearly identify those documents in her Rule 26(a)(3) pretrial disclosure statement. Documents exchanged in the Rule 26(a)(3) process have a different purpose than those disclosed under Rule 26(a)(1) or in response to RFPs or other affirmative discovery requests, all of which are produced to give the opposing party notice of the universe of documentary evidence relevant to a party's theory of claim or defense. In contrast, the Rule 26(a)(3) production as challenged here is for the unique purpose of *narrowing down that universe* of potentially relevant information already shared among the parties to what each party *actually contemplates using at trial*. This exchange is required to serve efficiency considerations by allowing each party to avoid wasting effort preparing to meet evidence

---

[5] Plaintiff dedicates the majority of her statement to arguing that Defendants' statement "was not truly joint," that Defendants filed their portion of the statement while she was suffering an acute medical condition, and the filing confused her. (Doc. 212 at 1–2.) But Defendants were constrained to file the Sixth Discovery Dispute upon the close of discovery, April 17, 2026, in compliance with the Court's Scheduling Order. (Doc. 57 ¶ 9 ("The Court will not entertain discovery disputes after the close of discovery absent truly extraordinary circumstances."). Moreover, Plaintiff herself has filed discovery disputes unilaterally at least twice, so her present objection to that very practice, notwithstanding Defendants' time constraint justification, is disingenuous. (*See, e.g.*, Docs. 190, 193.) As the Court did with Plaintiff's earlier discovery dispute filings, it considers both Defendants' and Plaintiff's position statement filed on the record.

that the other side previously disclosed but does not intend to use. But what each party does intend to use must be supplied at the Rule 26(a)(3) stage, in the form the party intends to use it, so the opponent can formulate all objections thereto, including all foundational and authenticity objections. Thus, it does not matter that Defendants might have a version of a document Plaintiff plans to use. Plaintiff needs to deliver the document in the form she intends to introduce it at trial. The Rule 26(a)(3) exchange is not to provide notice of the evidence for the first time—that had to happen in previous discovery phases. Rather, it is to show the other side the cards each party intends to play in their case-in-chief, in the form they would be played, so they may be fairly met. That didn't happen here.

Second, identifying her exhibits "by exhibit number" that she created and, according to Defendants, appear nowhere else except on her pretrial disclosure statement is no substitute for clear identification.

Third, whether Plaintiff acted in good faith or "substantially complied" with Rule 26 has no bearing on the outcome because exclusion of exhibits or witnesses not properly disclosed under Rule 26(a)(3) is "self-executing" and "automatic" under Rule 37(c)(1) unless the nondisclosure is substantially justified or harmless. Fed. R. Civ. P. 37(c)(1), Advisory Committee's Note (1993); *see also Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) ("[E]xclusion is an appropriate remedy for failing to fulfill the required disclosure requirements of Rule 26(a)."). This is for all of the reasons the Court set forth *supra*. As briefed by the parties, there is no dispute that Plaintiff's Exhibits 54 through 57 as listed in Doc. 208-3, the ABC Care witness, and Plaintiff's business-related damages were not previously disclosed during discovery. Plaintiff also fails to show that nondisclosure of these exhibits and witnesses was substantially justified or harmless. Accordingly, the Court will exclude them and any evidence related to business damages pursuant to Rule 37(c)(1).

As for the other exhibits, Defendants request, and Plaintiff does not oppose, that Plaintiff must produce them to Defendants with only a neutral cover sheet and BATES labels to allow for identification. The Court finds these requests to be reasonable.

Accordingly, Plaintiff shall produce Exhibits 1 through 53 and 58 through 62 listed in Doc. 208-3 with each page of those exhibits sequentially numbered and labeled in the page margin (*e.g.*, Plaintiff00001, Plaintiff00002). Plaintiff may not add pages that were not previously produced, including argumentative titles or descriptions, except that she may include a neutral cover page bearing her exhibit identification (*e.g.*, Exhibit 1). Plaintiff shall produce these exhibits to Defendants no later than fourteen days from the date of this Order. As soon as Plaintiff serves that production upon Defendants, Plaintiff shall not move, retitle, or otherwise alter that production in the Google Drive.

## VIII.  CONCLUSION

Plaintiff's behavior is very troubling. She has altered Rushmore's RFAs to ask the questions she prefers to answer rather than the ones Defendants asked and were entitled to ask, despite an express admonishment against that course of action. She has denied several of Nationwide's RFAs that are proven true in likely violation of her Rule 11 obligations. She has evaded requests for information that Defendants were entitled to access in order to support or test her $50 million damages claim. She has attempted to obstruct Defendants' discovery of her relevant complete health and credit score records. She has defied the Court's Scheduling Order by filing a motion to compel without leave. And she has unnecessarily multiplied litigation by presenting two frivolous and legally baseless discovery disputes to the Court and accusing Defendants' counsel once again of misconduct that they did not commit. The Court warned Plaintiff in its previous orders resolving prior discovery disputes that further misconduct will result in sanctions, and she will now face those consequences. They include several evidentiary sanctions that cure the specific effects of Plaintiff's discovery transgressions.

The Court strongly considered granting Defendants' multiple requests for terminating sanctions, as it is evident in the closeness of the question in the Court's analysis of the *Dreith* factors *supra*. After bending toward the exercise of restraint, the Court also seriously considered an immediate order of monetary sanctions in the form of awarding attorney's fees and costs to Defendants. Such an award is, in the Court's view, warranted.

But the Court wishes to further consider the indications of Plaintiff's financial limitations and the overall chilling effect that those awards might have on other similarly situated *pro se* litigants. It thus defers that question, also to observe and take into account Plaintiff's conduct of the remaining aspects of litigation of this matter. But Plaintiff should realize that she now walks a fine line. Should she fail to comply with the production of documents outlined herein, the Court will revisit the remedy of terminating sanctions and address at that point the outstanding issue of attorneys' fees and costs.

**IT IS ORDERED** granting in part and denying in part Defendants' Notice of Noncompliance and Motion for Sanctions (Doc. 171).

**IT IS FURTHER ORDERED** that Defendant Rushmore's RFAs 1 through 15 and Defendant Nationstar's RFAs 2 through 5 and 7 through 10 are deemed admitted. Plaintiff is precluded from offering evidence of health and credit score records, or referring to same, in her case-in-chief. The jury shall be informed of Plaintiff's failure to comply with the Court's January 6, 2026 Order, likely in the form of a spoliation instruction, if any claim to which those records would have been relevant survives dispositive motion practice.

**IT IS FURTHER ORDERED** that Plaintiff shall produce all documents responsive to Nationstar's second set of RFPs 26 through 30 and 66 through 73 no later than fourteen days from the date of this Order.

**IT IS FURTHER ORDERED** precluding from evidence documents currently listed as Exhibits 54 through 57 in Doc. 208-3 in this matter. Plaintiff is precluded from presenting any evidence pertaining to Plaintiff's business-related damages in this matter. Plaintiff also is precluded from calling or referencing the ABC Care witness at trial.

**IT IS FURTHER ORDERED** that Plaintiff shall produce Exhibits 1 through 53 and 58 through 62 listed in Doc. 208-3 with each page of those exhibits sequentially numbered and labeled in the page margin. Plaintiff may not add pages that were not previously produced, nor may she include argumentative titles or descriptions, except that Plaintiff may include a neutral cover page bearing her exhibit identification. Plaintiff shall produce her exhibits to Defendants no later than fourteen days from the date of this Order.

Once Plaintiff serves that production upon Defendants, Plaintiff shall not move, retitle, or otherwise alter that production in the Google Drive.

**IT IS FURTHER ORDERED** denying Plaintiff's Motion to Compel Continuation of Rule 30(b)(6) Deposition and for Award of Costs (Doc. 200).

Dated this 24th day of April, 2026.

Honorable John J. Tuchi
United States District Judge

- 22 -